| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SIMONA MONTALVO, | ) | Civil No. 11-cv-1827-L(BLM) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING PLAINTIFF'S** |
| | ) | **MOTION TO REMAND [DOC. 8]** |
| v. | ) | |
| | ) | |
| SWIFT TRANSPORTATION | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Swift Transportation Corporation removed this wages-and-hours action from the San Diego Superior Court. The notice of removal is based on diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Plaintiff Simona Montalvo now moves to remand this action, arguing that Defendant failed to establish CAFA's amount-in-controversy requirement. Defendant opposes.

The Court found this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1). (Doc. 13.) For the following reasons, the Court **GRANTS** Plaintiff's motion. (Doc. 8.)

11cv1827

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff is a California resident who worked for Defendant as a California-based driver. (First Am. Compl. ("FAC") ¶¶ 6–7 [Doc. 1-2].) Defendant is a truckload motor carrier service incorporated in Arizona that serves customers throughout the United States. (Rohwer Decl. ¶¶ 3–5, 7–10 [Doc. 1-4].) Plaintiff brings this action on behalf of certain of Defendants' California-based drivers and/or other employees for the purposes of unpaid payment of straight, minimum and/or overtime wages, particularly for hours attending orientations and/or training. (*Id.* ¶¶ 4, 24.) She asserts eight causes of action: (1) failure to pay all wages; (2) failure to timely furnish accurate itemized wage statements; (3) violations of California Labor Code § 203; (4) violations of California Labor Code § 212; (5) violations of California Labor Code § 203 regarding late checks; (6) penalties pursuant to California Labor Code § 2699; (7) unfair business practices; and (8) declaratory relief.

The proposed class includes six sub-classes categorized by the causes of action asserted in the FAC, such as failure to pay wages, failure to pay accurate itemized wage statements, and failure to comply with various California statutes. (FAC ¶ 24.) These sub-classes are as follows: (1) the Orientation Class, (2) the Wage Statement Class, (3) the Derivative LC 203 Class, (4) the LC 212 Class, (5) the Independent LC 203 Class, and (6) the 17200 Class. (*Id.*) Plaintiff seeks to recover alleged unpaid straight-time, minimum and overtime wages, pre-judgment interest, injunctive relief, penalties, attorneys' fees and costs, among others. (*See* Prayer for Relief.) As related to the amount in controversy, Plaintiff set forth the following allegation:

> [T]he individual claims of Plaintiff SIMONA MONTALVO and the members of the putative Classes herein, including each such putative Class Member's pro-rata share of attorneys' fees and all other requested relief, are under the seventy-five thousand dollar ($75,000.00) jurisdictional threshold for Federal Court and the aggregate claims, including attorneys' fees and all other requested relief, are under the five million dollar ($5,000,000.00) threshold of the Class Action Fairness Act of 2005.

(*Id.* ¶ 21; *see also* Prayer for Relief.) The parties do not dispute minimal diversity and numerosity of the class. Rather, the only immediate dispute between the parties is the amount in controversy.

## II. LEGAL STANDARD

An action is removable to federal court only if it might have been brought there originally. *See* 28 U.S.C. § 1441(a). The removal statute is "strictly construe[d] . . . against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal." *Id.* "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

CAFA vests district courts with "original jurisdiction of any civil action in which, inter alia, the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and in which the aggregate number of proposed plaintiffs is 100 or greater, and any member of the plaintiff class is a citizen of a state different from any defendant." *Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007) (quoting 28 U.S.C. § 1332(d)) (internal quotations marks omitted). After a plaintiff files an action in state court, the defendant must allege and bear the burden of proof that the amount in controversy exceeds $5,000,000. *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). Mere conclusory allegations are insufficient. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). The defendant must set forth, in the removal petition itself, the *underlying facts* supporting its assertion that the amount in controversy exceeds $5,000,000. *See Abrego Abrego*, 443 F.3d at 689.

Although the defendant bears the burden of proving that the plaintiff's action meets the requirements of CAFA, the court must also consider what level of proof that the defendant must meet. *Lowdermilk*, 479 F.3d at 998. The Ninth Circuit has articulated two pertinent scenarios that dictate what level of proof that the defendant must meet in order to show that the amount-in-controversy requirement has been satisfied. *Id.* (citing *Abrego Abrego*, 443 F.3d at 683). In the first, "where it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled[,]" the removing defendant must prove by "a

preponderance of the evidence" that the amount in controversy has been met. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). And in the second, "when a state-court complaint affirmatively alleges that the amount in controversy is less than the jurisdictional threshold, the 'party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met.'" *Id.* (citing *Lowdermilk*, 479 F.3d at 1000).

Courts have observed that "[a]lthough the precise meaning of legal certainty is not immediately apparent, it is something less than absolute certainty and more stringent than a preponderance of the evidence." *Campbell v. Vitran Express, Inc.*, No. CV-10-04442-RGK(SHx), 2010 WL 4971944, at *2 (C.D. Cal. Aug. 16, 2010) (quoting *Faracchao v. Harrah's Entm't, Inc.*, No. 06-1364, 2006 WL 2096076, at *2 n.1 (D.N.J. May 25, 2006)) (internal quotation marks omitted). To determine whether the removing defendant has met the more stringent burden of legal certainty, the court may consider facts in the notice of removal and may "require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Abrego Abrego*, 443 F.3d at 690 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

## III. DISCUSSION[1]

Plaintiff argues that this action should be remanded to state court because Defendant has failed to satisfy CAFA's $5,000,000 amount-in-controversy requirement. The Court agrees.

### A.    The Legal Certainty Standard Applies.

In *Lowdermilk*, the plaintiff sought damages on behalf of herself and the purported class members for unpaid wages, penalty wages, costs, attorneys' fees, and interest, a sum alleged in

---

[1] Plaintiff objects to Defendant's submission of additional evidence—specifically, three declarations—included with its reply. (Pl.'s Reply 1:21–2:16 [Doc. 16].) The gist of her argument is that the evidence is untimely. However, Plaintiff fails to provide any legal authority that states that evidence submitted with an opposition to a motion to remand is untimely or may not be considered by the court. In fact, other district courts have considered additional evidence submitted with oppositions to a motion to remand. *See, e.g., Campbell*, 2010 WL 4971944, at *4. Accordingly, the Court **OVERRULES** Plaintiff's objection and shall consider the additional evidence.

her prayer for relief to be "in total, less than five million dollars." 479 F.3d at 996. "In the jurisdiction section of her complaint, Plaintiff further alleged that '[t]he aggregate total of the claims pled herein do [sic] not exceed five million dollars.'" *Id.* Finally, the complaint's caption stated "THE AGGREGATE OF CLAIMS DOES NOT EXCEED 5 MILLION DOLLARS." *Id.* at 1003 (Kleinfeld, J. dissenting). The *Lowdermilk* court held that the plaintiff pled a "specific amount in damages" sufficient to meet the amount in controversy requirement, because it did not have to "look beyond the four corners of the complaint to determine whether the CAFA jurisdictional amount is met, as Plaintiff avers damages ('less than five million dollars') that do not reach the threshold for federal jurisdiction." *Id.* at 998. It further held that when a plaintiff has pled an amount in controversy less than the jurisdictional threshold in a state-court complaint, the "party seeking removal must prove with a legal certainty that CAFA's jurisdictional amount is met." 479 F.3d at 1000; *see also Davies v. Godiva Chocolatier, Inc.*, CV 10-1014, 2010 WL 2766862, at *2 (C.D. Cal. Apr. 16, 2010) ("Thus, because the FAC specifies a total amount in controversy (including attorneys' fees) less than the jurisdictional amount, [the defendant] must show 'to a legal certainty' that the amount in controversy exceeds the jurisdictional amount.")

Here, Plaintiff has expressly alleged that "the aggregate claims, including attorneys' fees and all other requested relief, are under the five million dollar ($5,000,000.00) threshold of [CAFA]." (FAC ¶ 21.) She reiterates this in her Prayer for Relief, that "all damages [as to all causes of action], including but not limited to restitution, penalties, interest and attorneys' fees[,] do not exceed an aggregate of $4,999,999.00." These allegations are functionally equivalent to the language found in the complaint in *Lowdermilk*, where the Ninth Circuit applied the legal certainty standard. Plaintiff has limited the total value of the entire complaint, not just damages, to less than $5,000,000. Therefore, the Court finds that Plaintiff has alleged an amount in controversy less than the $5,000,000 jurisdictional threshold, and the legal certainty standard applies.

//

//

**B.     Defendant Has Not Met Its Burden to Show that the Amount in Controversy Exceeds $5,000,000.**

Defendant does not challenge the application of the legal certainty standard. Rather, it contends that "[b]ased on Plaintiff's allegations and the evidence presented, Defendant's calculations of the amount-in-controversy satisfy this Court's jurisdiction to a legal certainty." (Def.'s Opp'n 1:15–17 [Doc. 14].) To support this contention, Defendant provides several calculations that it purports to be "very conservative" and only in the lowest range, which in sum exceed the $5,000,000 jurisdictional threshold (Def.'s Opp'n 21:3–11), and four declarations of Defendant's employees familiar with payroll and the orientation process. Plaintiff counters that Defendant fails to meet its burden. (Pl.'s Mot. 1:12–17 [Doc. 8].) She argues that "Defendant's calculations are based on conjecture, speculation and assumptions," falling short of the standard necessary for removal. (*Id.*)

**1.     Defendant Fails to Apply the Legal Certainty Standard.**

Plaintiff cites and applies ample authority on the legal certainty standard to support its arguments, such as *Guglielmino*, *Lowdermilk*, and *Abrego Abrego*. In contrast, Defendant does not substantively address the legal certainty standard at all. It merely appends the phrase "legal certainty" to its conclusions. In doing so, Defendant does not apply any law regarding the legal certainty standard. In fact, of the nine cases that Defendant cites in its opposition, only three mention the legal certainty standard. These cases are: *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938), *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394 (2d Cir. 2003), and *Lara v. Trimac Transp. Servs.*, No. CV 10-4280, 2010 WL 3119366 (C.D. Cal. Aug. 6, 2010). However, none of these cases are cited for their authority on the legal certainty standard. Rather, Defendant cites *Scherer* for the proposition that the amount-in-controversy inquiry concerns the amount Plaintiff puts into controversy in her complaint and not what she will *actually* owe, and cites *St. Paul Mercury* and *Lara* for the proposition that "the fact that Defendant may have an affirmative defense against Plaintiff's allegations . . . does not limit the amount that Plaintiff placed in controversy." (Def.'s Opp'n 4:9–13, 4:25–5:7.) Consequently,

Defendant fails to apply any applicable law to justify that it has met its burden under the legal certainty standard.

### 2. Defendant's Calculations Are Based on Class-Size Estimates That Are Not Supported by Evidence or Allegations in the FAC.

Even if Defendant properly applied the legal certainty standard, it still fails to meet it. Defendant presents calculations that are "very conservative" and thus minimum possible amounts in controversy, which Defendant contends still exceeds the jurisdictional threshold. In particular, for the Derivative LC 203 Class, LC 212 Class, and Independent Labor Code 203 Class, Defendant bases its calculations on the declarations it provides and allegations in the FAC. However, those calculations are ultimately based on class-size estimates that are not supported by evidence or allegations in the FAC. Consequently, Defendant's calculations fail to meet the legal certainty standard.

Defendant provides the declarations of Robin Rohwer, Director of Payroll, and Sarah Koogle, Payroll Supervisor, with its notice of removal and opposition to this motion as evidence to support its proposed class sizes. For the aforementioned classes, Defendant proposes the following class sizes: (1) Derivative LC 203 Class consists of 4,520 member, "former California-based drivers who attended orientation in California"; (2) LC 212 Class consists of 7,050 members, "current and former California-based drivers who (at some point) received payment via a Comdata Card"; and (3) Independent LC 203 Class consists of 5,940 members, "former California-based drivers, whose employment with [Defendant] ended during the four years prior to the filing of the Complaint." (Rohwer Decl. ¶ 13; Koogle Decl. ¶¶ 11, 13, 15.) The method to derive these numbers involved "compil[ing] both payroll and employee records to identify any new hires or re-hires during the specified time period in California." (Koogle Decl. ¶ 7.) Neither of these declarations reflect whether all or some of the members identified have claims to the alleged violations. In fact, the alleged violations are not substantively discussed in any of the declarations. Rather, to show that each member in these proposed classes has a claim to at least these three alleged violations, Defendant relies on Plaintiff's allegation in the FAC

that these violations resulted from a "consistent and uniform policy [and] practice." (*See* Def.'s Opp'n 9:10–16, 10:14–20, 12:2–1613:11–20, 18:17–21, 19:23–20:8.) But the validity of this reliance is questionable.

Contrary to Defendant's contention that it *conservatively* estimates the proposed class sizes, a closer examination of how Defendant derived its numbers shows otherwise. For the Derivative LC 203 Class, Defendant bases its estimate on presumably *all* former California-based drivers who attended an orientation in California between a specified time period. (*See* Koogle Decl. ¶¶ 11–12.) Then based on the allegation that Defendant's violations were a "consistent and uniform policy [and] practice," it contends that "*every* member of the proposed class is entitled to . . . penalties." (Def.'s Opp'n 10:14–20 (emphasis in original).) However, the allegations in the FAC do not suggest such an expansive class.

Plaintiff alleges that Defendant had "a consistent and uniform policy, practice and procedure of willfully failing to pay the earned wages of the members of the Orientation Class." (FAC ¶ 60.) The Orientation Class consists of California-based drivers who Defendant allegedly failed to pay wages to for attending orientations or training during a specified time period. (*Id.* ¶ 24(a).) In other words, Plaintiff first limits the class to those drivers who attended orientation or training during the specified time period, and then *further* limits the class to those who were not paid their allegedly due wages. This suggests that the proposed class size is the theoretical maximum, and that with the Orientation Class, Plaintiff is targeting a smaller subset of the group of people Defendant has proposed. Without additional evidence, the Court cannot determine to a legal certainty the size of that subset. Thus, Defendant's proposed class size for the Derivative LC 203 Class is supported by neither evidence nor allegations in the FAC.[2]

Similarly, Defendant's class-size estimate of the Independent LC 203 Class relies on faulty assumptions. Just as above, Defendant bases its estimate on presumably *all* former California-based drivers, "whose employment . . . ended during the four years prior to the filing

---

[2] Defendant provides two sets of proposed class sizes for the Derivative LC 203 Class. One based on the Rohwer Declaration, and another revised estimate based on the Koogle Declaration. This finding applies to both proposed class sizes.

of the Complaint." (Koogle Decl. ¶ 16.) And again, Defendant relies on the "consistent and uniform" allegation in the FAC and applies the violations to *every* driver in this time period. (Def.'s Opp'n 20:4–8.) Though Defendant contends that it could apply the violations to 100% of the proposed class members based on Plaintiff's allegations, it only assumes that 33% to 51% of the proposed class has such claims for its amount-in-controversy calculation. (*Id.*) However, once again, the allegations in the FAC do not suggest such an expansive class.

Plaintiff alleges that Defendant failed to pay members of the Independent LC 203 Class all wages due and owed at the time of their termination or within 72 hours of their resignation. (FAC ¶ 74.) She defines the class as drivers during a specified time period "whom Defendant[] independently failed to comply with Labor Code § 203." (*Id.* ¶ 24(e).) Foremost, Defendant concedes that it *assumed* a percentage in its calculation. (Def.'s Opp'n 20:4–8.) An assumption, regardless of its purpose, by definition is "something taken for granted." *Random House Webster's Unabridged Dictionary* 127 (2d ed. 1998). Thus, these values lack any evidentiary support, and do not reflect the members who have legitimate claims to the violations alleged in the FAC with any certainty. Putting aside this concession, Plaintiff's allegations do not reflect Defendant's expansive interpretation. Based on the allegations in the FAC, Plaintiff first limits the class to drivers within a specified time period, and then *further* limits the class to those whom Defendant failed to comply with Labor Code § 203. These allegations do not suggest that *every* driver employed during the specified time period should be included in the class, but rather only those who were violated under § 203 during the that time period. There is more doubt here than certainty that Defendant's estimate is accurate. Therefore, Defendant's proposed class size for the Independent LC 203 Class is also neither supported by evidence nor allegations in the FAC.[3]

Finally, Defendant initially proposed that the LC 212 Class consists of 7,050 members, "former California-based drivers who (at some point) received payment via a Comdata Card

---

[3] Defendant provides two sets of proposed class sizes for the Independent LC 203 Class. One based on the Rohwer Declaration, and another revised estimate based on the Koogle Declaration. This finding applies to both proposed class sizes.

during the class period." (Rohwer Decl. ¶ 13(d).) It then proceeded to assume five violations per class member because based on the "consistent and uniform" allegation, "there would be literally *hundreds* of violations per proposed class member, not merely five." (Def.'s Opp'n 11:22–12:16.) Using five violations per class member was an attempt to offer a "*very conservative calculation.*" (*Id.* at 11:22–24.) Defendant later revised this estimate based on the Koogle Declaration, which breaks down in detail how many class members were paid one, two, three, four, or five-or-more times on the Comdata Card. (Koogle Decl. ¶ 14.) The Koogle Declaration demonstrates that the initial estimate in the notice of removal is far from accurate. Moreover, it also shows that Defendant has the capability to produce very accurate and precise numbers regarding the violations for each class member in this proposed class, but that it has failed to do so. As a result, the initial estimate in the notice of removal clearly fails to satisfy the legal certainty standard.

The revised estimate for the LC 212 Class puts the class size at 2,775 members. (Koogle Decl. ¶ 14.) These members are categorized into subgroups based on the number of deposits potential members received on a Comdata Card, which translates into the number of violations. Each deposit is one violation. Of these individuals, 846 received a single deposit, 355 received two deposits, 194 received three, 164 received four, and 1,216 received five or more. (*Id.*) Even though the last subgroup includes members who have had considerably more than five deposits/violations, Defendant uses the aforementioned numbers to calculate its amount in controversy for the LC 212 Class for up to five violations, which totals $1,740,000.[4] (Def.'s Opp'n 19:14–21.) Plaintiff alleges that Defendant had a "consistent and uniform policy, practice and procedure" of failing to comply with Labor Code § 212 in that it paid members through the pay cards that were not fully negotiable. (FAC ¶ 68.) Furthermore, she defines the class as employees paid by a "method that is not negotiable at a California banking institution . . . ." (*Id.*

---

[4] The Court reached a different total than the one put forth by Defendant. The Court's calculation is as follows: [2,775 x $100 (initial violation)] + [355 x $200 (two violations)] + [194 x ($200 x 2) (three violations)] + [164 x ($200 x 3) (four violations)] + [1,216 x ($200 x 4) (five violations)] = $1,497,300. Defendant apparently made an error in its calculation for the five-violation members. Instead of multiplying by $1,000, which suggests six violations, it should have multiplied by $800. (*See* Def.'s Opp'n 19:14–21.)

¶ 24(d).) The evidence suggests this method is the Comdata Card. (*See* Koogle Decl. ¶¶ 13–14.) For this class, Defendant's interpretation of the allegations may be sound. The language suggests that deposits to the Comdata Card is the violation, and that every deposit would entail a violation. However, in light of the findings above and given that Defendant puts forth an amount in controversy of $1,740,000 for this class, combining that value with the $1,180,000 for the Orientation Class and $275,000 for the Wage Statement Class amounts in controversy fails to meet CAFA's jurisdictional threshold.[5]

In sum, absent evidence of bad faith, "there are cases—as in the instant case—in which the plaintiffs cannot anticipate from the outset the value of their case," and in such cases, "[t]hey are not obligated to overstate their damages to satisfy the defendant's interest in a federal forum, but may plead conservatively to secure a state forum." *Lowdermilk*, 479 F.3d at 1003. The Ninth Circuit has acknowledged that "CAFA's removal provision and the 'legal certainty' rule strike a balance, leaving plaintiff as master of her case, but giving defendant an option of a federal forum at the point when they can prove its jurisdiction." *Id.* While Defendant provides some evidence of potential class sizes, ultimately, the amounts in controversy for the Derivative LC 203 Class and Independent LC 203 Class fail to satisfy the legal certainty standard. Therefore, only the proposed amounts in controversy for the Orientation Class, Wage Statement Class, and LC 212 Class remain.[6] Consequently, assuming the validity of Defendant's calculations for the sake of argument, the total amount in controversy for the remaining classes adds up to $3,195,000.

Therefore, Defendant fails to prove with legal certainty that the amount in controversy for this case meets CAFA's $5,000,000 jurisdictional threshold.

//
//

---

[5] The former calculation is based on the Rohwer Declaration (Def.'s Opp'n 5:28–6:12), and the latter is based on the Koogle Declaration (*id.* at 16:2–8). The Court uses the higher estimated calculations put forth by Defendant because it did not assess the validity of these class sizes or their associated amounts in controversy.

[6] Defendant chose not to include any calculation for the 17200 Class.

## IV.  CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS** Plaintiff's motion and hereby **REMANDS** this matter to the San Diego Superior Court.  The Clerk of the Court shall mail a certified copy of this order to the state court.

**IT IS SO ORDERED**.

DATED: December 16, 2011

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. BARBARA LYNN MAJOR
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL